IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 2:10-CR-114 |
| ) | |
| BOBBY LYNN GREENE, JR. ) | |

**MEMORANDUM AND ORDER**

A warrantless search of the defendant's residence discovered evidence including firearms and twenty-seven marijuana plants. According to investigating officers Adams and Miller of the Washington County Sheriff's Department, the defendant consented to the search. According to the defendant, he did not.

The defendant has moved to suppress all evidence seized during the search [doc. 20]. Now before the court is the February 16, 2011 report and recommendation of Chief United States Magistrate Judge Dennis H. Inman [doc. 26], along with the defendant's objection thereto [doc. 31]. Magistrate Judge Inman recommends that the motion to suppress be denied.

The court has undertaken a *de novo* review of the report and recommendation, as is both statutorily and constitutionally required. *See United States v. Shami*, 754 F.2d 670, 672 (6th Cir. 1985). However, it is necessary only to review "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b). The district court need not provide *de novo* review where objections are frivolous, conclusive, or general. *See Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986).

The magistrate judge conducted an evidentiary hearing on the motion to suppress. Investigators Adams and Miller testified, as did the defendant. A transcript of the hearing has been filed. The relevant factual background, including the divergent testimony of the officers and the defendant, has been well detailed by the magistrate judge and need not be repeated herein. After considering the evidence and testimony, the magistrate found the officers' version of the events more credible.

In his objection, the defendant argues that "minor variances in the officers' testimony should give some clue to this Court and draws into question their credibility." Investigator Adams was directed by his lieutenant to follow up on a tip that the defendant was growing marijuana at his home. Investigator Adams testified, "I asked Investigator Miller to accompany me to the residence." While both officers testified that the defendant freely consented to the search of his home, his locked closet, and his basement, the defendant was not presented with a consent form to sign. Investigator Adams explained that he typically carries such forms with him but had left them in his car. It was in fact Investigator Miller who drove the two officers in his car to the defendant's residence.

The defendant's point on this issue appears to be that if Adams had in fact asked Miller "to accompany me," then surely Adams (as the invitor) would have driven. To characterize this discrepancy as even a "minor variance," as does the defendant, is a stretch. One officer asked another to accompany him on an investigation, and the two men decided that the invitee officer would drive. The court sees nothing nefarious or incredible about this

point.

The defendant next cites testimony pertaining to his *Mirandization* and the subsequent *Miranda* form (or statement form) that he signed. Investigator Adams testified that after finding firearms and marijuana in the defendant's closet, "I stood up basically out of the closet, advised Mr. Greene of his *Miranda* Warning. I cited the *Miranda* Warning to him, asked him if he understood those, and he agreed that he did understand his *Miranda*." Using slightly different phrasing, Investigator Adams subsequently testified, "I read his *Miranda* Warning to him based on the seeds in the closet." Investigator Miller similarly testified that it was Investigator Adams who "read the *Miranda* Warning to" the defendant after searching the closet. It appears, however, that neither officer had a *Miranda* form with him at that time, and a statement form was not presented to the defendant for signing until after other officers had arrived subsequent to the search.

The defendant's point is this - how could Investigator Adams have *read* him his rights immediately after searching the closet if he did not have a *Miranda* form with him at the time? Two possible answers come to mind. First, Investigator Adams testified that he routinely carries a notepad with the *Miranda* colloquy on it. Further, although the officers testified that the warning was *read* to the defendant, they both could well have been using the word "read" in the vernacular sense of "I read him his rights." Officer Adams elsewhere testified that he "advised" or "cited" the defendant's *Miranda* rights, and it is surely not implausible that a trained officer could do so from memory. Nothing regarding their use of

the word "read" renders either officers' testimony incredible in the undersigned's eyes.

Lastly, the defendant suggests that "the facts surrounding the mysterious Cynthia Bowman draws [sic] into question the officers' testimony." Ms. Bowman was renting the defendant's spare bedroom at the time of the search. Inside that bedroom was a locked safe. A search warrant was later obtained and a search of the safe revealed drugs and a gun. Both officers testified that they did not know Ms. Bowman prior to the search of the defendant's home, but the defendant *suggests* that she has worked as a confidential informant for the Washington County Sheriff's Department. Ms. Bowman has not been prosecuted, or apparently even located, following the discovery of the contraband in her safe.

It is unclear to the court how the defendant feels this issue is relevant to whether he did or did not consent to the search of his home. Nothing in the officers' testimony regarding Ms. Bowman leads the court to the conclusion that they were not credible witnesses. Arguments "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Layne*, 192 F.3d 556, 566-67 (6th Cir. 1999) (citation omitted).

As required, the court has conducted a *de novo* review of those portions of the report and recommendation to which the defendant objects. The court has also considered the parties' briefing and the suppression hearing transcript in its entirety. The court agrees with the magistrate judge that Investigators Adams and Miller were the more credible witnesses and, thus, that the government has met its burden of proving that the defendant

knowingly, intelligently, and voluntarily consented to the search of his home. *See Rosenthall v. Henderson*, 389 F.2d 514, 515-16 (6th Cir. 1968). As noted by Judge Inman, this decision is bolstered by the defendant's purported inability on the stand to recall whether he signed a *Miranda* form at all, even after being presented in court with the document that his lawyer has now twice conceded he signed. [Doc. 21, p.2; doc. 32, p.3].

The court accordingly **ADOPTS** the findings of fact and conclusions of law set out in Magistrate Judge Inman's report and recommendation [doc. 26]. The defendant's motion to suppress [doc. 20] is **DENIED**, and his objection [doc. 31] is **OVERRULED**.

    **IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge